UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| *vs.* ) | No. 2:16-cr-00028-JMS-CMM |
| ) | |
| FRANK SHAHADEY, ) | -02 |
| ) | |
| *Defendant*. ) | |

**ORDER**

On December 14, 2016, Defendant Frank Shahadey, a former Sheriff with the Vigo County Sheriff's Department who was assigned to the Vigo County School Corporation (the "VCSC") as a School Security Officer, was indicted on nine counts of wire fraud and one count of theft of government funds. [Filing No. 44.] Mr. Shahadey pled guilty to one count of wire fraud and the theft of government funds count and was sentenced on October 11, 2017 to sixteen months' imprisonment on each count, to run concurrently. [Filing No. 99.] The Court also ordered Mr. Shahadey to pay restitution in the amount of $80,500 to the VCSC and to pay a $200 special assessment. [Filing No. 99.] On September 28, 2021, the Government filed a Motion for Determination of Credit in which it asks the Court to determine whether Ms. Shahadey "is entitled to a credit toward his restitution for monies paid to [the VCSC] through a civil judgment in state court." [Filing No. 221 at 1.] The Court afforded the VCSC and Mr. Shahadey an opportunity to respond to the Government's motion, [Filing No. 222], both did so, [Filing No. 223; Filing No. 224], and the motion is now ripe for the Court's review.

1

# I.
## BACKGROUND

### A.     The Scheme[1]

Before being indicted in this case, Mr. Shahadey was a VCSC School Security Officer and Co-Defendant Franklin Fennell was the Facilities Director for the VCSC. Mr. Fennell was responsible for maintenance and servicing of all VCSC facilities, and routinely submitted requisitions to the VCSC Business Office which would then create Purchase Orders that were sent to vendors authorizing them to perform work. Once work was completed, the Business Office used VCSC funds to pay the vendors for supplies or services rendered.

Michael Pick owned a business that was a vendor for the VCSC and performed services such as tree trimming and tree and stump removal. Mr. Shahadey and Mr. Fennell demanded kickbacks from Mr. Pick's business, resulting in at least $80,500 in inflated costs to the VCSC. The kickback scheme took place from early 2014 to October 2016, and entailed Mr. Pick – at the direction of Mr. Shahadey and Mr. Fennell – submitting inflated and false estimates and invoices for work at VCSC locations to Mr. Fennell. Mr. Fennell then awarded the work contracts on the VCSC's behalf to Mr. Pick's business. When the work was completed, Mr. Fennell submitted the inflated invoices to the VCSC Business Office. The VCSC Business Office then paid Mr. Pick's business with VCSC funds, and Mr. Pick then deposited checks, withdrew cash, and paid cash back to Mr. Shahadey and Mr. Fennell. There were also occasions when Mr. Pick's business did not perform any services, and fake invoices were submitted for payment to the VCSC.

---

[1] This summary of the scheme Mr. Shahadey, Mr. Fennell, and Mr. Pick participated in is taken largely from the Court's November 10, 2016 Order on the Government's Motion for Revocation of Release Order. [Filing No. 37.]

### B. Mr. Shahadey Pleads Guilty and Mr. Fennell is Convicted

After Mr. Shahadey pled guilty to one count of wire fraud and one count of theft of government funds, the Court entered a Judgment requiring him, among other things, to pay restitution in the amount of $80,500. [Filing No. 99.] Mr. Shahadey's obligation to pay $80,500 in restitution to the VCSC is joint and several with Mr. Fennell. [Filing No. 99.] Records from the Clerk of the United States District Court for the Southern District of Indiana reflect that as of the date of this Order, Mr. Shahadey has paid $5,075.00 toward his $80,700 criminal liability (which includes his $200 special assessment) and owes $75,625.00.

On December 13, 2017, Mr. Fennell was convicted by a jury of nine counts of wire fraud, one count of theft of government property, and two counts of making material false statements to agents of the Federal Bureau of Investigation ("FBI"). [Filing No. 134.]

### C. The Garnishment Proceedings

In May 2018, the Government filed a Motion for Writ of Garnishment related to certain funds belonging to Mr. Shahadey in order to collect money toward the restitution. [Filing No. 173.] The Court issued a Writ of Garnishment, [Filing No. 185], Mr. Shahadey then filed a Motion to Clarify Restitution Judgment, [Filing No. 208], and the Court ordered that the garnishment proceedings be held in abeyance at the parties' request so that the parties could determine whether Mr. Shahadey was entitled to a credit toward his restitution, [Filing No. 212].

### D. The VCSC's Recovery From Mr. Pick

Meanwhile, in February 2018, the VCSC filed a civil lawsuit in Vigo Superior Court against Mr. Shahadey, his wife, Mr. Fennell, Mr. Pick, and M&P Properties Group, LLC ("M&P"), alleging claims of fraud, theft, and conversion (the "State Civil Action"). [Filing No. 221-1 (*Vigo Cty. Sch. Corp. v. M&P Properties Group, LLC, Michael R. Pick, Franklin V. Fennell, Frank*

*Shahadey, and Paula Shahadey*, Cause No. 84D02-1802-CT-001243).] The Complaint in the State Civil Action attaches the Criminal Complaint in this case, and appears to seek damages for the same conduct that forms the basis of the charges against Mr. Shahadey and others in this case. [Filing No. 221-1.]

On September 6, 2018, the VCSC obtained a judgment in the State Civil Action against two of the defendants, M&P and Michael Pick, in the amount of $88,000. [Filing No. 221-2.] The VCSC filed a Satisfaction of Judgment in the State Civil Action on May 2, 2019, acknowledging its receipt of $88,000 in full satisfaction of the judgment against M&P and Mr. Pick. [Filing No. 221-3.] The State Civil Action remains pending against Mr. Shahadey.

## II.
### DISCUSSION

In support of its motion, the Government argues that the Court should not alter or amend the Judgment against Mr. Shahadey because it does not have jurisdiction to do so, especially given the fact that Mr. Shahadey pled guilty to his crime and agreed that restitution in the amount of $80,500 was mandatory. [Filing No. 221 at 3.] It argues, however, that based on 18 U.S.C. § 3664(j)(2), which provides that a restitution amount shall be reduced by any amount later recovered as compensatory damages in a state civil proceeding for the same loss, Mr. Shahadey should receive a credit toward the restitution amount for $88,000 – the amount the VCSC recovered in the State Civil Action from M&P and Mr. Pick. [Filing No. 221 at 4.] The Government states that if the Court determines that Mr. Shahadey is entitled to the $88,000 credit, it will dismiss its Motion for Writ of Garnishment, but if not, the Government requests that the

Court enter a Final Order In Garnishment.[2] [Filing No. 221 at 5.] The Government also notes that counsel for the VCSC advised that it objects to any credit being applied to the amount of restitution owed by Mr. Shahadey. [Filing No. 221 at 4.]

After the Court afforded the VCSC an opportunity to respond to the Government's motion, the VCSC did so. [Filing No. 222; Filing No. 223]. In its response, the VCSC notes that Mr. Fennell was ordered to pay $110,600 in restitution, and that his liability is shared jointly and severally with Mr. Shahadey and Mr. Pick. [Filing No. 223 at 1.] It argues that 18 U.S.C. § 3664(j)(2) does not apply to the circumstances in this case because "[t]he $88,000 loss inflicted by [Mr.] Pick is distinct and in addition to the $110,600 loss [the VCSC] suffered at the hands of [Mr.] Shahadey and [Mr.] Fennell." [Filing No. 223 at 4.] The VCSC points to a spreadsheet created by the FBI during the pendency of this case, which reflects that the loss attributed to Mr. Fennell was $56,750 and the loss attributed to Mr. Shahadey was $46,050, for a total loss of $102,800 (which was later updated to $110,600 – the restitution amount reflected in the Judgment against Mr. Fennell). [Filing No. 223 at 4.] The VCSC asserts that the FBI spreadsheet also reflects an $87,546.02 loss resulting from Mr. Pick's inflated profit margins, and which is "[s]eparate and in addition to the $110,600 loss inflicted by [Mr.] Shahadey and [Mr.] Fennell." [Filing No. 223 at 4-5 (emphasis omitted).] The VCSC points to an example on the FBI spreadsheet showing that Mr. Shahadey and Mr. Fennel each received a $1,500 kickback, but the VCSC was only awarded $1,600 for Mr. Pick's inflated profit margin. [Filing No. 223 at 5.] It explains that the loss inflicted by Mr. Pick was for "the excess profit he made because of the

---

[2] The Government also states in its motion that it was "recently contacted by counsel for [Mr.] Shahadey's wife, who requested that the United States release certain liens that it filed against real property owned by [Mr.] Shahadey because the liens are impacting divorce proceedings." [Filing No. 221 at 3.]

scheme," whereas the loss inflicted by Mr. Shahadey and Mr. Fennell was due to "the level [invoices were] required to be inflated in order to cover the dollar-for-dollar amount of the kickbacks." [Filing No. 223 at 6.] The VCSC also notes that the judgment against Mr. Pick in the State Civil Action is not joint and several with Mr. Shahadey or Mr. Fennell. [Filing No. 223 at 6.] It asserts that § 3664(j)(2) only applies "when a defendant makes a civil payment and then that same defendant moves for a credit of his restitution order, or when co-conspirators make civil payment for the 'same loss' they jointly created," and that those circumstances are not present here. [Filing No. 223 at 6 (emphasis omitted).] The VCSC argues that, in any event, even if the Court determines that Mr. Pick's and Mr. Shahadey's actions resulted in the same loss under § 3664(j)(2), it should consider the total loss to the VCSC, which is $198,600 – the $88,000 loss inflicted by Mr. Pick plus the $110,600 loss inflicted by Mr. Shahadey and Mr. Fennell. [Filing No. 223 at 8.] It argues that if the $88,000 payment by Mr. Pick is subtracted from the total $198,600 loss, the amount left if $110,600, which is well above Mr. Shahadey's $80,500 restitution amount. [Filing No. 223 at 8.] Finally, the VCSC argues that crediting the $88,000 against Mr. Shahadey's restitution "defies common sense and fairness" because it ignores the joint and several liability language of the restitution orders, it would "unreasonably favor[]" Mr. Shahadey over Mr. Pick and Mr. Fennell, and it would prejudice the VCSC by "precluding an avenue of recovery against [Mr.] Shahadey." [Filing No. 223 at 9-11.] The VCSC requests that no credit be applied to Mr. Shahadey's restitution amount but that if the Court finds that some credit is warranted, it "should determine the amount of [the] credit in a manner consistent with common sense and fairness." [Filing No. 223 at 11.]

In his response to the Government's motion, Mr. Shahadey first notes that the motion affects Mr. Fennell and Mr. Pick, but the Government did not include those individuals on the

6

Certificate of Service provided with the motion. [Filing No. 224 at 1-2.] He argues that his Judgment "conflicts" with Mr. Fennell's Judgment because his restitution is $80,500 (jointly and severally with Mr. Fennell), but Mr. Fennell's Judgment is $110,600 (jointly and severally with him). [Filing No. 224 at 3.] Mr. Shahadey asserts that his Plea Agreement provided that the loss attributable to him is $46,050, and that if another defendant is found guilty or pleads guilty, his $80,500 restitution amount would be reduced to $46,050. [Filing No. 224 at 2.] He contends that because Mr. Fennell was found guilty, Mr. Shahadey's restitution amount should be reduced accordingly. [Filing No. 224 at 2.] Mr. Shahadey requests that the Court give Mr. Pick and Mr. Fennell the opportunity to respond to the Government's motion, that the Court reduce Mr. Shahadey's restitution amount to $46,050 and order that the amount has been satisfied, that the Court order that all liens against Mr. Shahadey's assets be released and satisfied, and that the Court order the VCSC to reimburse him for the $5,075 he has already paid in restitution. [Filing No. 224 at 6.]

At the outset, the Court notes that its authority to amend a judgment in a criminal case is limited to correcting "a clerical error," or "an error in the record arising from oversight or omission." Fed. R. Crim. P. 36; *see also* *Romandine v. United States*, 206 F.3d 731, 737 (7th Cir. 2000) ("[A]n illegal sentence may be corrected only if the aggrieved party appeals and the court of appeals remands for that purpose under [Fed. R. Civ. P.] 35(a), or if the error is so grave that relief becomes available under § 2255."). Because there is not a clerical error in Mr. Shahadey's Judgment, the Court cannot amend it to change the amount of restitution owed.

That said, a court can make a finding that a restitution amount should be reduced because the victim has received payment for his or her loss from another source. 18 U.S.C. § 3664(j)(2) governs Mr. Shahadey's request for a credit toward the restitution that he owes. It provides:

> Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in -- …(B) any State civil proceeding, to the extent provided by the law of the State.

The purpose of § 3664(j)(2) is to "prevent victims from [receiving] double recovery for their losses," *United States v. Brazile*, 244 F. Supp. 3d 780, 781 (N.D. Ill. 2016), and it is the defendant's "burden of proving that the loss amount should be reduced by compensation received by the victim from the defendant," *United States v. Malone*, 747 F.3d 481, 486 (7th Cir. 2014). The key inquiry in this case is whether the amount Mr. Pick paid to the VCSC is for the "same loss" that Mr. Shahadey's restitution amount addresses. *See United States v. Helfand*, 281 Fed. App'x 552, 556 (7th Cir. 2008) ("A restitution award must credit payments the defendant makes to the victim for the losses stemming from his offense…, but not for unrelated losses."). In order to determine whether Mr. Pick's $88,000 payment is for the same loss as the loss caused by Mr. Shahadey, the Court looks to Mr. Shahadey's Indictment, Plea Agreement, and the Judgment against him.

First, the forfeiture allegations in the Indictment state that the interests of Mr. Shahadey and Mr. Fennell subject to forfeiture include "the cash kickback payments they received from Individual A [Mr. Pick], and items purchased using those cash payments totaling $80,550." [Filing No. 44 at 7.] The forfeiture allegation is supported by the FBI Spreadsheet, which indicates that loss attributable to Mr. Shahadey and Mr. Fennell was for kickbacks they received, but loss attributable to Mr. Pick was for amounts by which he inflated his profit margin. [*See, e.g.*, Filing No. 223-1 (FBI Spreadsheet reflecting that : (1) Invoice 47, dated April 17, 2014, included inflated profit margin of $1,600 attributable to Mr. Pick, but resulted in $1,500 kickbacks to Mr. Shahadey and Mr. Fennell; and (2) Invoice 62, dated September 29, 2014, included inflated profit margin of $4,720 attributable to Mr. Pick, but resulted in $1,000 kickbacks to Mr. Shahadey and Mr.

Fennell).] The FBI Spreadsheet supports the VCSC's argument that the loss caused by Mr. Pick through his inflation of the profit margin on invoices was separate and apart from the loss caused by the illegal kickbacks received by Mr. Shahadey and Mr. Fennell.[3]

Second, the Court turns to Mr. Shahadey's Plea Agreement in this case. It provides, in relevant part, as follows:

> The amount of restitution is $80,500 to [the VCSC]. The parties agree that restitution shall be paid by the time of sentencing. In the event defendant cannot pay the restitution within six months of entering his plea of guilty in open court the provisions of the Forfeiture Allegations, as set forth in the Indictment, shall be applied.

[Filing No. 83 at 7.] Mr. Shahadey undisputedly did not pay the $80,500 in restitution within six months of pleading guilty, so the forfeiture allegations apply. As noted above, those allegations make clear that the $80,500 in restitution is for "the cash kickback payments [Mr. Shahadey and Mr. Fennell] received from Individual A [Mr. Pick], and items purchased using those cash payments totaling $80,550." [Filing No. 44 at 7.] This again supports the notion that Mr. Shahadey's restitution amount is to compensate for the kickbacks paid by the VCSC to him, and not for the increased profit margins caused by Mr. Pick.[4]

---

[3] Trial testimony from FBI Special Agent Joann Dowell confirms that the $110,600 restitution amount owed jointly and severally by Mr. Fennell and Mr. Shahadey was for "the total number in kickbacks paid…through Mr. Pick to [Mr. Fennell] and Mr. Shahadey." [Filing No. 145 at 98.]

[4] Mr. Shahadey argues that his Plea Agreement provided that his restitution "would be reduced to $46,050.00 if any other Defendant was found Guilty or pled Guilty," and that he is entitled to that reduction because Mr. Fennell was found guilty. [Filing No. 224 at 2; Filing No. 224 at 6.] No such provision is included in Mr. Shahadey's Plea Agreement, [*see* Filing No. 83], and any determination of a credit based on this argument goes beyond the scope of the Government's motion – which relates solely to a credit in the amount of Mr. Pick's payment to the VCSC. In any event, such a reduction would contradict the terms of both Mr. Shahadey's and Mr. Fennell's Judgments.

9

> Finally, Mr. Shahadey's Judgment provides:
>
> If this case involves other defendants, each may be held jointly and severally liable for payment of all or part of the restitution ordered herein and the Court may order such payment in the future. The victims' recovery is limited to the amount of loss, and the defendant's liability for restitution ceases if and when the victims receive full restitution.

[Filing No. 99 at 7.] The Judgment also provides that any co-defendants are jointly and severally liable. [Filing No. 99 at 7.] Mr. Fennell is the only other defendant in this case, and is jointly and severally liable for the $80,500 restitution amount according to the terms of Mr. Shahadey's Judgment.[5] Mr. Pick was a cooperator, is not a defendant in this case, and is not jointly and severally liable for Mr. Shahadey's $80,500 restitution amount. The Court also finds that the Government's decision not to charge Mr. Pick is indicative of its desire to separate Mr. Pick's liability from that of Mr. Shahadey and Mr. Fennell.

In sum, Mr. Shahadey's Indictment, Plea Agreement, and Judgment all indicate that the loss caused by Mr. Shahadey is separate and apart from the loss caused by Mr. Pick, so Mr. Shahadey is not entitled to a credit under § 3664(j)(2) because Mr. Pick's payment to the VCSC was not for the "same loss" as that caused by Mr. Shahadey.[6] *See Helfand*, 281 Fed. App'x at 556

---

[5] Mr. Fennell's Judgment is in the amount of $110,600, and Mr. Shahadey and Mr. Pick are jointly and severally liable for that amount. [Filing No. 158.] Mr. Pick is not listed as jointly and severally liable in Mr. Shahadey's Judgment. [Filing No. 99.] Mr. Fennell's and Mr. Shahadey's Judgments are not "inconsistent," as Mr. Shahadey argues. Rather, Mr. Fennell went to trial after Mr. Shahadey had already pled guilty and judgment had entered. The trial testimony supported the $110,600 restitution amount, and the fact that the Government had not yet gathered that trial evidence at the time that Mr. Shahadey pled guilty is of no harm to Mr. Shahadey. Further, the Government has never claimed that Mr. Pick was erroneously left out of Mr. Shahadey's Judgment as a jointly and severally liable individual.

[6] The Court declines to provide Mr. Pick and Mr. Fennell with an opportunity to respond to the Government's motion. Mr. Pick has no interest in the outcome of the motion, Mr. Fennell has not requested a credit, and the Government's motion only requests a determination of credit as to Mr. Shahadey.

(defendant not entitled to credit under § 3664(j)(2) where "the restitution amount is based on only the McGill transaction, so [defendant] should not receive credit for payments he made to Flagstar for other transactions").  Accordingly, the Court **GRANTS** the Government's Motion to Determine Credit, [Filing No. 221], to the extent it determines that Mr. Shahadey is not entitled to any credit for the $88,000 Mr. Pick has paid to the VCSC in connection with the State Civil Action.

### III.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Government's Motion to Determine Credit, [221], to the extent it determines that Mr. Shahadey is not entitled to a credit toward the outstanding amount he owes in this matter based on payments made by Mr. Pick to the VCSC in connection with the State Civil Action.  In light of this ruling, the Court **LIFTS** the **STAY** on the garnishment proceedings. [*See* Filing No. 185; Filing No. 212.]  To the extent the Government requests further action from the Court, it shall file a motion by **December 20, 2021** setting forth the action it requests.

Date: 12/10/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**
McCready and Keen, Inc.
A One America Company
P.O. Box 368
Indianapolis, IN 46206